United States District Court
Southern District of Texas
**ENTERED**
August 07, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Joseph Francis Kallus, *et al.*, | § | |
| | § | |
| *Plaintiffs,* | § | |
| v. | § | |
| | § | No. 4:20-cv-1065 |
| Weber−Stephen Products LLC, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a products liability case.[1] Plaintiffs Joseph Francis Kallus and Patty

Kallus (collectively "Plaintiffs") assert strict product liability and negligence claims

against Weber-Stephen Products, LLC ("Weber"), Ferrellgas, Inc. ("Ferrellgas"),

and Blue Rhino Corporation ("Blue Rhino") (collectively referred to as

"Defendants"), arising from burns Mr. Kallus suffered when using his Weber grill

and Blue Rhino propane gas tank.[2] Amend. Compl., ECF No. 17. Weber filed a

motion for summary judgment, asserting that Plaintiffs failed to provide expert

---

[1] Judge Ellison referred this motion pursuant to 28 U.S.C. § 636 (b)(1). Order, ECF No. 52. A motion for summary judgment is a dispositive pretrial matter appropriate for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(A); *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 763 (5th Cir. 2016).

[2] Plaintiffs notified the Court that they reached a settlement with Defendants Ferrellgas, Inc. and Blue Rhino Corporation.

testimony supporting their claims; the Weber grill was not the cause of Plaintiff's injuries; the injuries arose from non-Weber replacement products; and Weber asserts it has no duty to warn regarding the dangers involved with the products of others. Def's. Mot. Summ. J., ECF No. 45. Plaintiff opposes the motion asserting that material fact issues preclude summary judgment. Pls.' Resp., ECF No. 62.

After reviewing the briefing, law, and evidence presented, the Court finds that there are no genuine issues of material fact and Weber is entitled to summary judgment. The Court finds that, in this products liability and negligence case, Plaintiffs are required to produce expert opinion testimony to establish their claims. Because Plaintiffs do not have expert opinions critical of Weber regarding either the design, manufacture, or warnings related to the injuries asserted, Plaintiffs cannot establish their claims against Weber. Further, Weber did not manufacture, design, or market the products that caused Plaintiffs' injuries, specifically the propane tank and regulator hose. Because Weber's products did not cause the injuries, Plaintiffs cannot establish a products or negligence claim against it. Likewise, their claims for implied and express warranties fail. Accordingly, the Court recommends that Weber's motion for summary judgment be granted.

## I.   BACKGROUND

On June 12, 2019, Mr. Kallus suffered severe burns when he adjusted the connection between the propane tank and his grill while preparing to grill steaks,

causing a flash fire. ECF No. 17. It is undisputed that Weber manufactured and designed the grill that Mr. Kallus was using at the time of the incident. *Id.*; ECF No. 45 at 7.

In 2011, Mr. Kallus obtained the grill through a rewards program. ECF No. 45 at 7 (citing Dep. J. Kallus 11/3/20, ECF No. 46 at 22 (29:3-22)). The grill came with a regulator hose that a third-party, Cavanga, manufactured. *Id.* (citing Dep. R. Bruin 11/18/20, ECF No. 46 at 44 (188:1-189:2)). A regulator hose connects the propane tank to the grill and thus supplies fuel. *Id.* At some point, likely in or after 2017, Mr. Kallus fitted his grill with an aftermarket regulator hose[3] that was not one of the Weber certified parts;[4] a third-party, Chen Fong, manufactured the replacement regulator hose in 2017. *Id.* (citing Dep. Buske 2/24/22, ECF No. 46 at 9 (81:10-82:5)). Shortly before the incident, Plaintiffs acquired a Blue Rhino[5] propane tank and used it for the first time the day of the

---

[3] Mr. Kallus does not recall replacing the regulator but testified that the regulator the parties' experts inspected was the regulator on his grill as of June 12, 2019. ECF No. 45 at 7-8.

[4] The uncontroverted testimony also established that the replacement hose was six inches shorter than the Weber-certified hose. Dep. S. Buske 2/24/22, ECF No. 46 at 9 (82:15-20); Dep. R. Bruin 11/18/20, ECF No. 46 at 43 (187:1-8).

[5] Defendant Ferrellgas is a re-filler, distributor, and seller of propane cylinders sold under the Blue Rhino brand. Pls.' Amend. Compl., ECF No. 17 at 2. As is common in the industry, Ferrellgas allows customers to return empty propane tanks in exchange for refilled tanks at various retail locations. ECF No. 62 at 9. Most propane tanks in this exchange program are reused for years; for example, the tank at issue was more than 25 years old. *Id.* at 4. Typically, these tanks are inspected and certified after 5, 7, or 12 years. *Id.* Each propane tank is fitted with a face seal that allows connection between the propane cylinder and the regulator valve. *Id.* at 9-10. After refilling, each tank is fitted with a blue cap and kept in a metal cage, typically outside of the store reselling them. *Id.* at 10.

3

fire. *Id.* at 8 (citing Dep. J. Kallus 11/3/20, ECF No. 46 at 25-28 (45:21-46:1, 81:6-82:6)).

On June 12, 2019, Mr. Kallus connected the new propane tank, which was sitting next to the grill not under it,[6] to the Chen Fong regulator hose and heated the grill in preparation for cooking. Dep. J. Kallus 11/3/20, ECF No. 46 at 27-28 (81:6-82:6). When he later checked the grill, Mr. Kallus noticed that it had not properly heated. *Id.* at 29 (89:4-14)). Consequently, while the grill was still on, he checked the connection to the propane tank, attempting the adjust it by turning the plastic nut, when it ignited. *Id.* at 29, 33 (89:15-22) (92:10-15); Dep. J. Kallus 12/9/21 at 55 (89:18-24).

Plaintiff Patty Kallus, who had been inside the house, ran towards the door when she heard the explosion. ECF No. 62 at 8. Mrs. Kallus then took her husband to the hospital for treatment. ECF No. 17 at 4. As a result of the explosion, Mr. Kallus suffered severe burns to his chest, hands, pelvic region, and legs. Mr. Kallus continues to receive treatment for these injuries and their lasting effects. *Id.*

The uncontroverted evidence established that Weber designed the grill to store the propane gas tank inside the grill cabinet. *Id.* (citing Dep. R. Bruin

---

[6] Mr. Kallus further testified that he usually did not put the propane tank under the grill inside the cabinet with the cabinet doors closed and that is how it was on the night of the accident. *Id.* at 31-32 (91:12-92:2).

11/18/20, ECF No. 46 at 42 (186:15-187:8)). All Weber grills come with an owner's manual which describes proper use and handling. *Id.* at 9 (citing Misch Aff., ECF No. 46 at 79-145, attaching Owner's Guide)). The manual instructs that the propane tank should be placed inside the grill cabinet. Dep. R. Bruin 11/18/20, ECF No. 46 at 42 (186:15-19). The owner's manual also instructs users to replace grill parts with Weber-certified parts, like the Cavanga regulator which came with the grill. Aff. Misch, ECF No. 46 at 88 (replacement regulators and hose must be those Weber specified) & 89 (replacement propane tanks must match regulator supplied with the Weber grill).[7] The troubleshooting guide instructs consumers to turn the burner off before adjusting the grill. Dep. J. Kallus 12/9/21, ECF No. 46 at 59 (08:8-99:17).

Mr. and Mrs. Kallus filed suit against Weber, Ferrellgas, and Blue Rhino for product liability and negligence claims. ECF No. 17 at 4-11. In their amended complaint, Plaintiffs seek damages for Mr. Kallus's bodily injury and medical expenses, Mr. Kallus's long-term impairment, as well as Mrs. Kallus's anguish and loss of consortium. ECF No. 17 at 11.

Defendant Weber now moves for summary judgment. ECF No. 62.

---

[7] The owner's manual for the grill also s advises owners to contact Weber for information regarding Weber-certified replacement parts and to ensure that any replacement parts are suitable. *Id.*

## II.   SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (internal quotation marks omitted), *aff'd*, 563 U.S. 277 (2011).

In seeking summary judgment, the "moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Nola Spice*, 783 F.3d at 536 (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof

that there is an issue of material fact warranting trial." *Nola Spice*, 783 F.3d at 536; *see also Celotex*, 477 U.S. at 325.

If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). The non-movant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice*, 783 F.3d at 536 (quoting *LHC Grp., Inc.*, 773 F.3d at 694). The non-movant must identify specific evidence in the record and articulate how that evidence supports his claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little*, 37 F.3d at 1075). However, the court must draw all reasonable inferences in the light most favorable to the non-moving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

## III.   WEBER IS ENTITLED TO SUMMARY JUDGMENT.

Weber asserts that it is entitled to summary judgment on three grounds. First, Plaintiffs failed to establish a causal link based on expert testimony that proves the

existence of a design defect, manufacturing defect, or failure to warn. Second, Weber did not design, manufacture, market, or install the product that caused Plaintiff's injuries. Third, Plaintiffs' implied and express warranty claims are precluded as a matter of law. ECF No. 45 at 6. The Court will discuss each argument in turn.

### A. Plaintiffs' Products Liability Claims Fail for Lack of Expert Testimony.

Weber argues that summary judgment is warranted because Plaintiffs failed to provide expert testimony to establish a causal link between the product's alleged defect and Plaintiffs' injuries. ECF No. 45 at 15. The Court agrees.

#### 1. Expert testimony is necessary in the instant case.

Weber asserts that expert testimony is required in this case to prove the product claims. Plaintiffs argue to the contrary that expert testimony is not necessary.

Plaintiffs' products liability claims are based on alleged design defects and failure to warn. Pls.' Amend. Compl., ECF No. 17 at 4-5. "[T]o recover for a products liability claim alleging a design defect, a plaintiff must prove that (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Harrison v. Medtronic, Inc.*, 561 F. Supp. 3d 698, 707 (N.D. Tex. 2021). "[A] marketing defect occurs when a defendant knows or should have known of a potential risk of harm presented by the product

but markets it without adequately warning of the danger or providing instruction for safe use." *Id.* at 705.

In these types of cases, expert testimony is necessary for any issue beyond the jurors' common understanding, for example when the jurors' common knowledge and experience would not allow them to reach a conclusion with reasonable probability. *Gharda USA Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 348 (Tex. 2015). This is particularly important in products liability cases where the product is complicated, and a layperson would not easily understand the implications of design issues or warnings. Thus, in determining whether expert testimony is required to sustain a plaintiff's complaint, the court exercises its discretion based on an assessment of the complexities of the case. *See McCon v. FCA US LLC*, No. CV 15-00587-BAJ-RLB, 2017 WL 3083263, at *1 (M.D. La. July 19, 2017).

Plaintiffs argue that expert testimony is unnecessary, asserting that jurors could readily understand the design issues and the failure to warn standard could be readily grasped. *Malbrough v. Crown Equip. Corp.*, 392 F.3d 135, 137 (5th Cir. 2004) ("[T]here may be cases in which the judge or the jury, by relying on background knowledge and 'common sense,' can 'fill in the gaps' in the plaintiff's case' ... without the aid of expert testimony.").

While this is true in some instances, in the Fifth Circuit, courts routinely require expert testimony for products liability claims even when the products are in

common use. *Stewart v. Cap. Safety USA*, 867 F.3d 517, 521 (5th Cir. 2017). In *Stewart*, the court reasoned that, to find injury causation, a jury would have to conclude that a different lifeline cable or a different warning would have prevented plaintiff's death. *Id*. Thus, each member of the jury would require familiarity with physics, engineering, and oil rig practices and procedures. The court found that the case raised questions that are of "sufficient complexity to be beyond the expertise of the average judge and juror" and that "common sense" did not "make[ ] obvious." *Id.* at 521-22 (*quoting Morgan v. Gaylord Container Corp.*, 30 F.3d 586, 590–91 (5th Cir. 1994)).

This case deals with complex issues regarding the design and manufacture of propane gas grills, regulator valves, face seals, and pressurized gas cylinder tanks. *See* ECF No. 17 at 4-12 (describing the products at issue and their functions). Moreover, to discern the validity and strength of Plaintiffs' claims, the jurors would need to possess a firm knowledge of pressure vessels, the behavior of propane gas under pressure, and regulator valves, among other complex issues of physics and chemistry. *See Stewart*, 867 F.3d at 521. Further, to demonstrate that a differently designed system would have prevented the accident, the jurors must be able to grasp the potential design flaws in Weber's grill, the Chen Fong regulator valve, and the Ferrellgas propane tank. *Id.* 520-21 (demonstrating that, to understand plaintiff's argument, the jury must understand the design of the underlying products, their

engineering, and possible alternative designs). Laypeople cannot easily understand these issues and therefore they require expert testimony.

Plaintiffs further argue that jurors regularly grasp the legal concepts at issue. ECF No. 62 at 21. This argument mischaracterizes the relevant standard. Expert testimony is required when jurors would be unable to comprehend the facts and products at issue, not the legal standard. *Stewart*, 867 F.3d at 521; *Morgan*, 30 F.3d at 590–91.

Therefore, the Court determines that expert testimony is necessary for Plaintiffs to prove their products liability claims.

### 2. *Plaintiffs failed to provide the necessary expert testimony.*

Having determined that expert testimony is necessary, the Court finds that Plaintiffs have failed to provide the requisite expert testimony to sustain their design defect and failure to warn claims.

#### i. *Plaintiffs' experts do not claim that Weber had a defective design.*

As stated above, a Plaintiff claiming design defect must prove that "(1) the product was defectively designed so as to render it unreasonably dangerous, (2) a safer alternative design existed, and (3) the defect caused the injury for which the plaintiff claims damages." Tex. Civ. Prac. & Rem. Code § 82.003(a)(6); *see also Hina v. Mattel, Inc.*, No. 4:17-CV-553, 2017 WL 5905266, at *3 (E.D. Tex. 2017).

Here, Plaintiffs' fire and explosion expert opined that Mr. Kallus's manipulation of the valve/tank connection caused the leak that led to the explosion. Dep. S. Buske, ECF No. 46 at 12 (155:2-23) (there was no leak until Mr. Kallus touched the regulator). He further agreed that Weber did not manufacture the replacement Chen Fong regulator. *Id.* at 14-15 (180:21-182:1) (Weber did not manufacture the regulator and it was not a Weber-certified part). Indeed, Buske testified that his expert opinion is in no way critical of Weber, and the "O-ring" located in the propane tank valve had deteriorated to the point that it caused a leak. *Id.* at 16 (187:9 – 188:21) (noting value leaked and admitting that he had no opinion critical of Weber); Dep. S. Buske 2/24/2022, ECF No. 62-1 at 303 (33:10-35:5) (tank's O-ring face seal deteriorated due to age and oxidation, not a design defect).

Similarly, Plaintiff's engineering expert Jon B. Ver Halen opined that the propane tank was outside the grill cabinet, and that Mr. Kallus' manipulation—in this case loosening—of the tank valve, combined with the replacement hose's shortened length compared to the Weber-certified part, caused the explosion. Dep J. Ver Halen, ECF No. 46 at 72-73 (45:12-24) (observing there was no leak unless the valve was loosened). Both experts' opinions are consistent with Weber's corporate representative's testimony that having the tank outside the cabinet[8] and using a non-

---

[8] Mr. Kallus admits that, on June 12, 2019, he placed the propane tank outside the grill cabinet. ECF No. 62 at 193. This is expressly contrary to instructions in the owner's manual which state that the propane tank must be housed inside the grill cabinet. Indeed, Mr. Kallus admits that he

certified replacement hose that is shorter than the original regulator put undue stress on the connections between the tank, the regulator, and the grill. Dep. R. Bruin 11/18/20, ECF No. 46 at 43 (187:1-8).

In sum, the product that caused the injuries is not a Weber product, and Plaintiffs failed to point to expert testimony which ties Weber's design to the cause of the accident. As Plaintiffs have failed to provide the necessary expert testimony, Plaintiffs cannot sustain their design defect claims. *Stewart*, 867 F.3d at 521.

### ii. *Plaintiffs' experts do not claim that Weber's warnings were deficient.*

Nor can Plaintiffs sustain their failure to warn claims for the same reasons. Texas law requires Plaintiffs to prove two elements for marketing defect or failure to warn claims: (1) the warning was defective, and (2) the failure to warn caused the plaintiff's condition or injury. *Gutierrez v. Ethicon, Inc.*, 535 F. Supp. 3d 608, 627 (S.D. Tex. 2021). Plaintiff must also show that adequate warnings would have made a difference in the outcome; that is, that they would have been followed if provided. *Gen. Motors Corp. v. Saenz on Behalf of Saenz*, 873 S.W.2d 353, 357 (Tex. 1993); *see also Johnson v. L'Oreal USA S/D, Inc.*, No. MO:19-CV-00155-DC, 2021 WL 2419455, at *7 (W.D. Tex. Mar. 16, 2021). If a warning specifically mentions the

---

read the section of the owner's manual instructing him to place the propane tank inside the grill cabinet. ECF No. 62 at 193. Q. "So you knew when you read the manual that Weber says put the cylinder -- should be installed inside the cabinet with the house clipped, right?" A. "Yes." Dep. J. Kallus 12/9/2002, ECF No. 62-1 at 193 (94:17-20).

circumstances at issue, then the warning is adequate as a matter of law. *Seifried v. Hygenic Corp.*, 410 S.W.3d 427, 433 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

First, Plaintiffs offered no expert critical of Weber's warnings. In fact, their fire and explosion expert testified that he was expressing no opinion on Weber's warnings. Dep. S. Buske 2/24/22, ECF No. 46 at 55 (93:16-18). Without expert testimony, Plaintiffs cannot sustain their failure to warn claim. *Stewart*, 867 F.3d at 521.

Moreover, Weber's warnings specifically addressed the circumstances at issue. Mr. Kallus acknowledged that the troubleshooting section of the manual explains what to do when there is an excess flow valve issue—meaning the burners are on high but the flames are small, and the temperature is low—as was the situation he faced. Dep. J. Kallus, ECF No. 46 at 60-61 (98:8-99:5).[9] The owner's manual specifically instructs the operator to turn all burner control knobs to the "off" position before inspecting the grill, Owner's Guide, ECF No. 46 at 98, which Plaintiff did not do here. Based on that warning, Plaintiffs' fire and explosion expert Buske testified that, had Mr. Kallus followed Weber's instructions on the excess flow valve issue, there would not have been an accident. Dep. S. Buske, ECF No.

---

[9] Plaintiffs' expert testified that the low temperature when the three burners were on high indicated that the excess flow valve was engaged. Dep. S. Buske 2/24/22, ECF No. 46 at 7 (76:16-23).

62-1 at 313-14 (76:24-78:6). Thus, Weber's warnings directly addressed the issue Mr. Kallus faced and therefore were adequate as a matter of law. *Seifried*, 410 S.W.3d at 433.

Nonetheless, Plaintiffs argue that Weber failed to warn them about the risk of side loading a propane regulator valve and tank. ECF No. 62 at 15-16. Side loading in this context refers to the act of placing lateral pressure on the connection between the regulator valve and the propane tank, which may compromise the seal. Such pressure could allow gas to leak out from the seal between tank and regulator valve. Mr. Kallus stated that, had he been warned about the dangers of side loading, he would not have engaged in such a practice and therefore would not have been harmed. ECF No. 62 at 15-16. Despite Plaintiffs' argument, their expert still stated no opinion critical of Weber's warnings. Dep. S. Buske 2/24/22, ECF No. 46 at 16 (188:19-21). Therefore, Plaintiffs' claim fails as a matter of law. *Stewart*, 867 F.3d at 521.

Because Plaintiffs have failed to provide the necessary expert testimony, Plaintiffs cannot sustain their defective warnings claims. Moreover, since Weber's warning address the situation Mr. Kallus encountered, the warnings are adequate as a matter of law.

### B. Plaintiffs' Negligence Claims Fail.

Defendant Weber also moves for summary judgment as to Plaintiffs' negligence claims on the grounds that Weber did not design, manufacture, market, or install the product that caused Plaintiffs' injuries. ECF No. 45 at 19. The Court agrees.

The basic standard for negligence requires a plaintiff to prove three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damage proximately caused by the breach. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). The threshold inquiry in a negligence case is duty. *Davis v. Dallas Cnty., Tex.*, 541 F. Supp. 2d 844, 850 (N.D. Tex. 2008) (*quoting Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)). A plaintiff must prove the existence and violation of a duty the defendant owed to plaintiff. *Centeq Realty*, 899 S.W.2d at 197. If there is no duty, liability for negligence cannot exist. *Garcia Gonzales v. Smitty*, No. 1:20-CV-0605-LY, 2021 WL 1759861, at *2 (W.D. Tex. May 4, 2021), report and recommendation adopted sub nom. *Gonzales v. Smitty*, No. A-20-CV-605-LY, 2021 WL 2792326 (W.D. Tex. May 25, 2021).

Generally, no one has a legal duty to protect another from the actions of a third party. *See In re Walmart, Inc.*, 620 S.W.3d 851, 857 (Tex. App.—El Paso 2021, no pet.). In products liability cases, a plaintiff cannot prevail on a claim for design

defect, manufacturing defect, or failure to warn unless defendant's product proximately caused the injury. *Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83, 88 (Tex. App.—El Paso 2012, no pet.). Additionally, it is settled law that a manufacturer has no duty to warn on another manufacturer's products, even if those products may be used together. *Block v. Wyeth, Inc.*, No. CIV.A. 3:02-CV-1077-, 2003 WL 203067, at *1 (N.D. Tex. Jan. 28, 2003); *Firestone Steel Prod. Co. v. Barajas*, 927 S.W.2d 608, 616 (Tex. 1996).

Here, the O-ring seal on the tank valve failed, thus causing a gas leak that led to an explosion that injured Mr. Kallus. ECF No. 45 at 19; Dep. S. Buske 2/24/2022, ECF No. 46 at 16 (188:11-21); Dep. S. Buske 2/24/2022, ECF No. 62-1 at 303 (33:10-35:5). Plaintiffs admit that Ferrellgas designed, manufactured, and sold the propane tank. ECF No. 17 at 9. Plaintiffs' expert testified that neither the propane tank nor regulator valve were Weber products. Dep. S. Buske 2/24/22, ECF No. 46 at 16 (188:11-18). Their expert further testified he had no opinions critical of Weber. *Id.* (188:19-21). In sum, Weber did not design, manufacture, market, or sell the products which failed, and Plaintiffs have no expert opinion that Weber proximately caused their injuries.

Because Plaintiffs failed to establish that Weber's product proximately caused their injury, their claims fail as a matter of law. *Gann*, 394 S.W.3d at 88.

### C. Plaintiffs' Implied and Express Warranty Claims Fail.

Plaintiffs also bring claims for breach of implied and express warranty. ECF No. 17 at 6. Defendants argue that these claims are precluded as a matter of law. ECF No. 45 at 22. The Court agrees.

#### 1. *Plaintiffs implied warranty claims fail.*

As a general rule, any plaintiff bringing claims for breach of implied warranty must demonstrate all of the following: (1) that defendant sold (or leased) goods to plaintiffs, (2) that defendant knew plaintiff was buying the goods for a particular purpose, (3) defendant delivered goods which did not conform to plaintiff's particular purpose, (4) plaintiff notified defendant of the non-conformity, and (5) plaintiff suffered injury as a result. Tex. Bus & Com. Code § 2.314; *see also Scherer v. Tex. Coast Yachts, LLC*, No. 01-20-00412-CV, 2022 WL 2251816, at *9 (Tex. App.—Houston [1st Dist.] June 23, 2022, no pet.).

Texas law requires that a plaintiff notify a seller of an alleged breach of implied warranty within a reasonable time after they discover or should have discovered any breach or be barred from any remedy. *Harrison v. Medtronic, Inc.*, 561 F. Supp. 3d 698, 709 (N.D. Tex. 2021). In analyzing each product at issue, a product which performs its ordinary function adequately does not breach the implied warranty of merchantability merely because it does not function as well as the buyer

would like, or even as well as it could. *Harrison*, 561 F. Supp. at 708 (*citing Gen Motors Corp. v. Brewer*, 966 S.W.2d 56, 57 (Tex. 1998)).

Plaintiffs' claim for breach of implied warranty fails in multiple regards. First, as already established above, Plaintiffs' expert admits that Weber's products were not the products that failed, causing Plaintiffs' injuries. Dep. S. Buske 2/24/22, ECF No. 46 at 16 (188:11-18) (Plaintiffs' expert testified that neither the propane tank nor regulator valve were Weber products.). Weber did not make or sell the part that failed, the O-ring in the propane tank. *Id.*; Dep. S. Buske 2/24/2022, ECF No. 62-1 at 303 (33:10-35:5). Plaintiffs provided no evidence that they relied on Weber when purchasing either the aftermarket Chen Fong regulator or the Blue Rhino propane tank. *See Scherer*, 2022 WL at *9. Therefore, Weber cannot be liable for any breach of implied warranty for the Chen Fong regulator or Blue Rhino tank. *See Harrison*, 561 F. Supp. 3d at 709.[10]

Likewise, Plaintiffs' claim for breach of implied warranty also fails because there is no evidence that the Weber grill was unfit for a particular purpose.

Thus, the Court recommends summary judgment in favor of Weber on

---

[10] The court in *Harrison* also held that a claim for breach of implied warranty must also fail if such a claim hinges on a failed claim for breach of manufacturing, design, or marketing defect. *Harrison*, 561 F. Supp. 3d at 709 ("Plaintiffs have not alleged a plausible claim for a breach of implied warranty, as they did not allege plausible claims for manufacturing, design, and marketing defects. Because Plaintiffs' claim of breach is predicated entirely upon these insufficient allegations, Plaintiffs' claim of breach of the implied warranty of merchantability is also insufficient.").

Plaintiffs' claim for breach of implied warranty.

### 2. *Plaintiffs' express warranty claims also fail.*

As a general rule, there are six elements to a claim for breach of express warranty, all of which are necessary. *Great Am. Products v. Permabond Intern., a Div. of Nat'l Starch and Chem. Co.*, 94 S.W.3d 675, 681 (Tex. App.—Austin 2002, no pet.). To prevail on their claim, a plaintiff must demonstrate that (1) the seller made an express factual assertion or promise related to the goods at issue, (2) the fact or promise was the basis for the bargain, (3) that plaintiff relied on that that fact or promise to make the purchase, (4) that the goods failed to comply with the fact or promise, (5) that plaintiff was injured by the good's failure to comply, and (6) that the failure of the goods to comply was the proximate cause of plaintiff's injury. *Am. Eurocopter Corp. v. CJ Sys. Aviation Grp.*, 407 S.W.3d 274, 291 (Tex. App.—Dallas 2013, aff'd).

Here, Plaintiffs allege that Weber induced them to buy the grill in question because Weber stated in advertising materials that the grill was "safely designed, tested and manufactured." ECF No. 17 at ¶ 40 ("Weber expressly warranted to potential users of the propane grill that it was safely designed, tested and manufactured and was safe for the uses for which it was designed and/or advertised to be used."). In Plaintiffs' view, this statement created an express warranty, which Weber breached by providing a grill which was unsafe. *Id*. Whether this was a

factual statement or mere puffery is irrelevant. Plaintiffs have failed to provide evidence that they relied on this advertisement to purchase their grill. Indeed, Plaintiffs admit that they purchased the grill using points accrued in an employee rewards program and made the purchase through that program, rather than directly through Weber or a retailer. ECF No. 17 at 3; Dep. J. Kallus 11/3/20, ECF No. 46 at 22 (29:3-22). There is no evidence to suggest that Plaintiffs saw the advertised statement and then acted relying on that information to purchase the grill.

Therefore, nothing in the record suggests that Weber made a factual assertion or promise upon which Plaintiffs relied. *Am. Eurocopter Corp.*, 407 S.W.3d at 291 (Plaintiffs must make their purchase relying on Defendant's factual assertion to sustain a claim for breach of express warranty). Because there is no evidence that Weber made any express warranties, let alone warranties that were breached, Weber is entitled to summary judgment on Plaintiffs' express warranty claims.

## IV.   CONCLUSION

Therefore, the Court recommends that Defendant's motion for summary judgment, ECF No. 45, should be **GRANTED**, and Plaintiffs' claims against Weber should be **DISMISSED WITH PREJUDICE**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of**

factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on August 7, 2022, at Houston, Texas.

_____
Dena Hanovice Palermo
United States Magistrate Judge